**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| QILE CHEN, | : | |
| | : | |
| Plaintiff, | : | Civ. Action No.: 10-863 (FLW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| HD DIMENSION, CORP., | : | |
| and HAROLD YE, | : | |
| | : | |
| Defendants. | : | |

---

**WOLFSON, District Judge:**

Presently before the Court is a motion filed by Defendant Harold Ye ("Ye" or "Defendant") to dismiss Plaintiff Qile Chen's ("Plaintiff" or "Chen") Complaint against him pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's Complaint (the "Complaint") alleges that Defendants HD Dimension, Corp. ("HD") and Ye (collectively, "Defendants") breached an employment contract; fraudulently induced Plaintiff to enter into an employment contract; and that Defendants breached the implied covenant of good faith and fair dealing.  Count One, breach of contract, and Count Three, breach of the implied covenant of good faith and fair dealing, of the Complaint are brought only against HD, while Count Two, fraud in the inducement, is brought against both Defendants.  As to the causes of action brought only against HD, Plaintiff seeks to "pierce the corporate veil" in order to hold Ye personally liable for HD's actions.  For the reasons set forth below, Ye's motion to dismiss is GRANTED

I.        **BACKGROUND**

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).   As such, the following facts are taken from the Complaint.

Plaintiff is a Chinese national, currently residing in the United States.  Compl. at ¶1. Ye is a citizen of the United States and the principal shareholder, president, and chief executive officer of Defendant HD.  Id. at ¶3.  HD is a business incorporated under the laws of New Jersey with its principal place of business in Princeton, New Jersey.  Id. at ¶2. Despite its corporate form, Plaintiff alleges that HD "is the mere 'alter ego' of Ye."  Id. at ¶2.

In 2006, Plaintiff responded to an advertisement placed by HD on the website of the Chinese Students & Scholars Association at the University of Nebraska-Lincoln.  Id. at ¶7. Plaintiff alleges HD "claimed to be a consulting firm that, under a so-called H-1B Non-Immigrant Work Visa program, placed foreign professionals at major United States corporations on a temporary basis and at salaries commensurate with the prevailing wage for the position, as is required by United States Immigration Law."  Id.

In May 2006, after applying for a position, Plaintiff met with HD's representative in Beijing, Sean Hu.  Id. at ¶9.  Plaintiff alleges that Mr. Hu "repeated the representations made in Defendant HD's advertisement."  Id.  On May 6, 2006, Plaintiff and HD entered into an employment agreement.  Id. at ¶0.  According to the employment agreement, Plaintiff was hired as a "Business Analyst."  Id. at ¶11; see also Copy of Employment Agreement,

attached to Certification of William P. McLane as Exhibit A (hereinafter "Ex. A"), at ¶6.[1] Plaintiff was to be compensated at "an annual gross salary of $45,000, prior to any deduction or withholdings." Compl. at ¶12; Ex. A at ¶5(a). The term of employment was to be "for five years, starting from the date that Employee signed this agreement. Ex. A at ¶6(a);[2] see also Compl. at ¶¶12, 14. Under the employment agreement, Plaintiff would pay HD $5,000 to file an H1-B Visa petition, which would allow Plaintiff to enter the United States for employment. Compl. at ¶13. Plaintiff, in return, was required to attend job preparation training classes, at a cost to Plaintiff of $10,000, and to "use his best efforts to promote the interests of HD and its affiliates and… devote his full business time, energy, and skill exclusively to the business and affairs of HD and affiliates during the Term set forth." Compl. at ¶14; Ex. A at ¶¶4, 6(a).[3]

"[O]n or around August 9, 2006, [Plaintiff] paid $5,000 to Defendant HD for the Visa petition." Compl. at ¶15. "On or about April 1, 2007, Defendant HD filed an H1-B Visa Petition on [Plaintiff's] behalf." Id. Contrary to the terms of the employment agreement, Defendant HD indicated on the H1-B Visa Petition that Plaintiff would be paid the "prevailing wage"[4] of $53,000 per year and would be working as a "software engineer." Id. In April 2007, Plaintiff was approved for an H-1B Visa for the period of October 1, 2007 through September 30, 2010. Id. at ¶17. Plaintiff did not receive any salary payments during the period of time between signing the employment agreement and his arrival in the United States. Id. at ¶16. In addition to the payment for the Visa petition, Plaintiff paid

---

[1]     There are two ¶6 on page 2 of the Employment Agreement. This is a reference to the first ¶6 – "Employment Position and Duties". Id.
[2]     This is a reference to the second ¶6 – "Terms of Employment"
[3]     This is a reference to the first ¶6 – "Employment Position and Duties"
[4]     A requirement of an H-1B Non-Immigrant Work Visa program is that employers must certify that they will pay foreign employees entering the United States the prevailing wage for workers with similar skills and qualifications. Compl. at ¶8.

Defendant HD $5,000 towards the $10,000 for training.  Id. at ¶18.  The remaining $5,000 was to be deducted from Plaintiff's salary.  Id.  Plaintiff was not required to complete any documentation related to tax withholdings, deductions, Social Security benefits, or any similar Federal or State employment filings either at the time of signing the employment agreement, or upon arriving in the United States to begin employment.  Id. at ¶¶12, 17.

After arriving in the United States, Plaintiff received monthly payments of $300 for six months while in training and was specifically trained as a computer programmer.  Id. at ¶¶18-19.  "By June of 2008, Defendant [HD] had still failed to place [Plaintiff] with any company."  Id. at ¶20.  "In July of 2009, [Plaintiff] received a phone call from Defendant Ye, and was told that due to the fact that Defendant HD was being investigated by government officials, all persons without jobs had to transfer to another legal immigration status."  Id. at ¶21.

Plaintiff alleges that "Defendant HD and Defendant Ye had, and continue to have, a practice of inducing foreign professionals to come to the United States, knowing full well that Defendant HD may be unable or unwilling to find them adequate positions and will not pay them the agreed upon salary."  Id. at ¶22.  Plaintiff also contends that Defendants knowingly made false representations in the aforementioned website advertisement.  Id. at ¶7.  Further, Plaintiff claims the employment agreement is a form agreement, used by Defendants "to similarly recruit and exploit numerous foreign professionals."  Id. at ¶23.

Plaintiff filed the three-count Complaint on February 18, 2010.  Because Defendant HD has not filed an answer to the Complaint, on August 27, 2010, default was entered against Defendant HD for failure to plead.  On May 17, 2010, Defendant Ye filed the present motion to dismiss all counts of Plaintiff's Complaint against him.

II.     STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).  In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to

5

dismiss." <u>Id.</u>   Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1949.  Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

Ye additionally moves to dismiss Plaintiff's fraud in the inducement claim against him for failure to plead with the particularity required under Fed. R. Civ. P. 9(b).  The legal standard for dismissing a claim pursuant to Fed. R. Civ. P. 9(b) is set forth <u>infra</u>.

## III.   DISCUSSION

As a preliminary matter, the Court again notes that although all three counts in Plaintiff's Complaint are asserted against HD, only the second count, fraud in the inducement, is brought against Ye personally.  It is therefore unnecessary, on the instant motion, for the Court to decide whether Plaintiff has sufficiently stated a claim for breach of contract or breach of implied covenant of good faith (Counts One and Three, respectively), as these claims are not asserted against Ye individually.   However, since Plaintiff is attempting to hold Ye liable for Counts One and Three on a veil-piercing theory, the Court will consider whether Plaintiff has sufficiently alleged facts to assert a piercing theory.

### 1.  Piercing the Corporate Veil

Plaintiff attempts to "pierce the corporate veil" and hold Ye personally responsible for HD's actions because "Defendant HD is the mere 'alter ego' of Defendant Ye."  Compl. at ¶2.  In response, Ye denies that HD is merely his "alter ego," and further argues that the facts alleged in the Complaint, even when taken as true, fail to form a basis to pierce HD's

corporate veil.  The Court finds that the Complaint fails to allege facts sufficient to establish any of the elements required for a piercing the veil claim.

It is axiomatic that "a corporation is a separate entity from its shareholders, <u>Lyon v. Barrett</u>, 89 N.J. 294, 300 (1982), and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." <u>State Dept. Of Environmental Protection v. Ventron Corp.</u>, 94 N.J. 473, 500 (1983).   In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form.  <u>Id.</u>  Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil.  <u>Id.</u>; <u>Lyon</u>, 89 N.J. at 300. "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." <u>Tung v. Briant Park Homes, Inc.</u>, 287 N.J. Super. 232, 240 (App. Div. 1996).

In New Jersey, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." <u>The Mall at IV Group Properties, LLC v. Roberts</u>, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) (quotation omitted).  However, even in instances where one individual shareholder or director dominates the corporate entity, "liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by

using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law." Ventron, 94 N.J. at 500-501.

In determining whether a unity of interest and ownership exists under the first prong, the Third Circuit has applied six non-binding factors to guide this inquiry:

> [1] gross undercapitalization ... [2] "failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988) (citations omitted). With respect to the second element, a plaintiff need not prove common law fraud but instead demonstrate that the defendants, via the corporate form, perpetrated "a fraud, injustice, or the like," a less exacting standard. Group Properties, 2005 WL 3338369, at *3.

Here, Plaintiff has failed to allege any facts to establish either unity of interest and ownership or that Ye used HD's corporate form to perpetrate a fraud or injustice. With respect to the first element, the Complaint fails to allege any of the Craig factors listed above; the Complaint does not allege undercapitalization, siphoning of funds, or a complete disregard for the corporate structure and record keeping. Indeed, the only allegation in support of piercing the veil is Plaintiff's conclusory claim that "Defendant HD is the mere 'alter ego' of Defendant Ye." Compl. at ¶2. A complete failure to allege any of the Craig factors is fatal to a piercing the veil claim. See State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 680 (D.N.J. 2009). The Complaint additionally fails to allege that Ye used the corporate form to perpetrate a fraud.

Plaintiff attempts to include additional allegations in his Opposition Brief, however, these allegations are also insufficient because they merely recite his breach of contract

claim against HD.  <u>See</u> Compl. ¶¶12, 16, 18, 19.  In any event, on a motion to dismiss, the Court can only consider the allegations contained in the Complaint.  <u>CNA v. United States</u>, 535 F.3d 132, 140 n.3 (3d. Cir. 2008) (Finding that a district court may not look outside the pleadings when considering a 12(b)(6) motion); <u>Frederico v. Home Depot</u>, 507 F.3d 188, 201-202 (3d Cir. N.J. 2007) (A court does not consider "after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)) (<u>citing Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) ("'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'")).  In sum, the Court finds Plaintiff has failed to sufficiently allege the elements required for a piercing the veil claim.

### 2.   Count Two - Fraud in the Inducement

Having found that Plaintiff has unsuccessfully pled a piercing the corporate veil theory, the Court need only address Count Two of the Complaint.  The Complaint alleges that HD made the following material representations: (1) that it would employ Plaintiff as a Business Analyst for five years following the effective date of the Employment Agreement; (2) it would apply on Plaintiff's behalf for an H-1B visa as a "Business Analyst; and (3) that if Plaintiff obtained a visa, Defendant HD promised to place Plaintiff with a U.S. corporation within two or three months after receiving training. Compl. ¶28.  Plaintiff argues that these misrepresentations induced him into signing the Employment Agreement, and that he relied on these false statements in coming to the United States for employment.  Compl. ¶31.  Plaintiff further alleges that HD and Ye were aware that these representations were false at the time they were made, and intended for Plaintiff to rely on them.  Compl. ¶29.  Ye counters that Plaintiff's fraudulent inducement claim is barred by the express terms of the

Employment Agreement, and furthermore, Plaintiff has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b).  Ye additionally argues that Plaintiff's claim is barred by the economic loss doctrine.

### A.  Failure to State a Claim under Rule 9(b)

As a preliminary matter, to the extent Plaintiff attempts to include additional allegations in his Opposition Brief, the Court will only consider the allegations in Plaintiff's Complaint to determine whether Plaintiff has pleaded fraud in the inducement with particularity.

Rule 9(b) requires "[i]n all averments of fraud…, the circumstances constituting fraud. . .shall be stated with particularity."  Fed. R. Civ. P. 9(b).  In <u>Lum</u>, the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir.1984).  Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Id</u>.  (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations).  Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.  <u>See Saporito v. Combustion Eng'g</u>, 843 F.2d 666, 675 (3d Cir.1988)<u>; Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658-59 (3d Cir. 1998); <u>Klein v. General Nutrition Cos.</u>, 186 F.3d 338, 345 (3d Cir.1999).

361 F.3d at 223-224.

Thus, the nature or subject of the fraud, or an indication of who made the alleged representations and to whom, must be set forth in the plaintiff's pleadings.  <u>A-Valey Engineers, Inc. v. Board of Freeholders of Camden</u>, 106 F. Supp. 2d 711, 716 (D.N.J. 2000).

The Rule's heightened pleading requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

"A cognizable fraud in the inducement claim must contain 'a misrepresentation of material fact; knowledge or belief by the defendant of its falsity; intent that the other party rely on the misrepresentation; and reasonable reliance thereon by the other party.'"  Pappas, 646 F. Supp. 2d at 681 (quoting Jewish Center of Sussex County v. Whale, 86 N.J. 619, 623 (1981)).  "'Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong.'"  Id. (quoting Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J. 1998).  However, a party is fraudulently induced to enter into an agreement when "'a knowing misstatement has been made, on the basis of which the defrauded party signs the instrument.'"  Id. (quoting Metex Mfg. Corp. v. Manson, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008) (quoting Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 144 (App. Div. 1960))).

The Complaint here fails to plead with the requisite particularity.  Plaintiff merely alleges that (1) HD made material representations to Chen;[5] (2) HD and Ye knew the representations were false at the time they were made; (3) HD and Ye intended for Chen to rely on these representations; and (4) Chen relied on such representations in entering the

---

[5]      Chen alleges the following representations were made: (1) HD would employ him as a Business Analyst for a period of five years from the effective date of the Agreement at the prevailing wage for such a position; (2) HD would apply on Chen's behalf for an H-1B Visa as a "Business Analyst;" and (3) HD promised that, if Chen obtained a visa, to place him with a U.S. Corporation within two to three months after receiving training.  Compl. ¶28.

Employment Agreement.  Compl. ¶¶28-31.  Significantly, the Complaint fails to allege that Ye personally made any representations Plaintiff.  Instead, the Complaint alleges the representations made were contained in advertisements and repeated to Chen by HD's Beijing representative, Sean Hu.  Compl. ¶¶7, 9.  Nor does the Complaint specifically set forth that HD and/or Ye did not intend to honor the Employment Agreement.  As such, the Complaint fails to plead the "date, time or place" on which Ye made the alleged misrepresentation or otherwise "inject[] precision and some measure of substantiation into [Plaintiff's] allegations of fraud." Lum, 361 F.3d at 223-24.  Although Plaintiff's opposition brief attempts to clarify, albeit unsuccessfully, his fraudulent inducement claim, the Court is constrained on a 12(b)(6) motion to consider only the Complaint and its attached documents, and cannot consider additional allegations included in Plaintiff's brief. See CNA, supra, 535 F.3d at 140 n.3.

### B.  Express Terms of Employment Agreement

Ye also argues that Plaintiff's fraudulent inducement claim is barred by the express terms of the Employment Agreement by virtue of the clause entitled "Entire Understanding," which states:

> "This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior and written agreements and understandings relating to the employment of Employee, which render such prior agreements and understandings null and void and of no further force and effect.  The parties acknowledge and agree that neither of them has made any representation with respect to the subject matter of this agreement or any representations including the execution and delivery hereof, except such representations as are specifically set forth herein, and each party acknowledges that he/she has relied on his/her or its own judgment in entering into this agreement.

See Ex. A, ¶11.  Defendant asserts that the alleged "material representations" Plaintiff lists concerning length of employment, wage rate, visa status, and placement at a U.S. company

(see Compl. ¶28), all relate to Plaintiff's employment and therefore are within the subject matter of the Employment Agreement.  Defendant argues that by signing the Employment Agreement, Plaintiff acknowledged that the Employment Agreement superseded, and rendered null and void, all prior agreements and understandings relating to his employment, including the "material representations" listed above.  Defendant further argues that by signing the contract Plaintiff acknowledged and agreed that he was not induced into the execution of the Employment Agreement by any representations other than those contained in the Employment Agreement.

To the extent Ye argues Plaintiff's fraud in the inducement claim is barred by virtue of the integration clause contained in the Employment Agreement, the court's decision in Blanos v. Penn Mutual Life Ins. Co., No. 09-5174, 2010 U.S. Dist. LEXIS 2326, at *16-17 (D.N.J. Jan. 12, 2010), is persuasive.  The plaintiff in Blanos alleged, *inter alia*, that the defendant made "oral representations that a certain number of 'producers' would be recruited ... that Plaintiff was to oversee" and committed fraud by "later failing to recruit the requisite number of producers."  Id. at *1.  The defendant contended that the plaintiff's claim was "belied by the terms of his employment contract which impose[d] no such commitment on the Company and expressly disavow[ed] any outside representations."  Id. at *3.[6]

---

[6]     The provision of the contract relied on by the defendants in Blanos stated:

This document constitutes the entire agreement and understanding concerning the subject matter hereof between the parties hereto and supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. Each of the parties hereto acknowledges that neither party, nor his or its agent or attorney, has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this instrument, and acknowledges that neither party executes this instrument in reliance on any such promise, representation or warranty not contained here.

Although the plaintiff in that case styled his claim as "'fraud in the execution' of his contract" the court noted the claim was "not a model of clarity" and "[t]o the extent [plaintiff's] claim asserts that [the defendant] failed to fulfill its obligations under the Employment Agreement, it is a garden-variety breach of contract cause of action and does not sound in tort." Id. at *14.  Analyzing the plaintiff's claim as a breach of contract cause of action, the court held the plaintiff's claim was barred by the express terms of the employment agreement.  Id. at *15.  Specifically, the court found that the "entire agreement and understanding" provision of the agreement barred any claims based on representations not included in the terms of the contract.  Id. at *15.

The court also noted the plaintiff's claim "might also be construed as an allegation that [the plaintiff] was fraudulently induced to enter the Employment Agreement," and analyzed the plaintiff's claim in this light as well.  Id. at *16.  However, the court concluded that "any allegation of fraud in the inducement [was] conclusively rebutted by the acknowledgments Plaintiff made when executing the Employment Agreement."  Id. Specifically, the court found the contract "clearly stated that it 'supersede[d] and replace[d] all prior negotiations, proposed agreements and agreements, written or oral," and the plaintiff acknowledged that the defendant "had not 'made any promise, representation or warranty whatsoever, express or implied, not contained' in that contract" by signing the employment agreement.  Id.  Ultimately, the court concluded that "regardless of whether Plaintiff... asserts a cause of action for breach of contract or fraud in the inducement, that

---

Blanos, 2010 U.S. Dist. LEXIS 2326, at *16.

claim is barred by the express terms of the Employment Agreement and must be dismissed with prejudice." Id. at *17.

The court's reasoning in Blanos is applicable to the instant case insomuch as the "Entire Understanding" clause evidences that Plaintiff acknowledged that Defendants made no "representation with respect to the subject matter of this Agreement or any representations inducing the execution and delivery [t]hereof, except such representations as are specifically set forth [t]herein." See Id. at *16; Ex. A, ¶11.   Therefore, the express terms of the Employment Agreement bar Plaintiff from asserting a cause of action, either for breach of contract or fraud, arising out of any alleged representations relating to his employment which are not specifically set forth in the Employment Agreement.[7]

## C.  Economic Loss Doctrine

Ye contends that the economic loss doctrine bars Plaintiff's fraud in the inducement claim because it is supported by the same underlying facts as his breach of contract claim.[8] Specifically, Defendant argues that "plaintiff's fraud in the inducement claim is, at its core, a breach of contract claim" as the essence of Plaintiff's complaint is that "HD did not perform its obligations under the Employment Agreement."  Def.'s Reply Br. at pg. 7.  "The economic

---

[7]      The Court notes that there is a line of cases supporting the proposition that "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud, etc." Lo Bosco v. Kure Eng'g, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (citing Notch View Assocs. V. Smith, 260 N.J. Super. 190, 202-03 (Law Div. 1992); see also Leibholz v. Hariri, No. 05-5148, 2006 U.S. Dist. LEXIS 52993, at *27 (D.N.J. July 13, 2006). However, "[a] showing of simple non-performance of the promise will not satisfy the plaintiff's burden to show that the promise was fraudulent when made." Lo Bosco, 891 F. Supp. 1031 (citing Mallon v. Prudential Property & Cas. Ins. Co., 688 F. Supp. 997, 1008-9 (D.N.J. 1988).  In the instant case, the allegations set forth in the Complaint are insufficient to support such a claim.  Indeed, the Complaint merely alleges that HD and Ye failed to perform their obligations under the Employment Agreement.  These allegations, without more, do not support a claim for fraud in the inducement.

[8]      Having first been raised in Defendant's Reply Brief, Plaintiff did not address the economic loss doctrine in its Opposition brief and has not sought leave to submit a sur-reply.  As such, the following discussion is based on the Court's independent review of the issue.

loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Co., 6 F.3d 604, 618 (3d Cir. 1995). In other words, whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties. Capitalplus Equity, LLC v. Prismatic Development Corp., No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008) (citation omitted). For instance, a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement. Metex, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008); Unifoil Corp. v. Cheque Printers & Encoders Ltd., 622 F. Supp. 268, 271 (D.N.J. 1985) (finding that courts have "construed the law of New Jersey to prohibit fraud claims when the 'fraud contemplated by the plaintiff ... does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself.'"); see also Rainbow Apparel, Inc. v. KCC Trading, Inc., No. 9-cv-05319, 2010 U.S. Dist. LEXIS 51664, at *28 (D.N.J. May 26, 2010) ("When analyzing the permissibility of fraud claims under the economic loss doctrine, New Jersey state and federal courts have drawn a distinction between allowable claims 'extrinsic to the contract,' such as those alleging 'fraud in the inducement' of a contract, and impermissible claims based upon a fraud in the performance of the contract.") (quoting Shan Indus., LLC v. Tyco Int'l (US), Inc., 2005 U.S. Dist. LEXIS 37983, at *17 (D.N.J. Sep. 12, 2005) (other citations omitted))).

In <u>Bubbles N' Bows, LLC v. Fey Pub. Co</u>, No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007), this Court elaborated on the rationale for the economic loss doctrine, stating that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have addressed in their agreement."  The <u>Shan</u> court illustrated the difference between impermissible "fraud in the performance" and allowable "fraud in the inducement" in the following way:

> The critical issue is whether the allegedly tortious conduct is extraneous to the contract.  ...  [A]n act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be.  Illustrating with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.

<u>Shan</u>, 2005 U.S. Dist. LEXIS 37893, at *19 (<u>citing</u> <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, No. 95-6455, 2000 U.S. Dist. LEXIS 487, at *22-23 (D.N.J. Jan. 10, 2000), <u>aff'd in part, rev'd in part on other grounds</u>, 253 F.3d 159 (3d Cir. 2001) (citations omitted))).

As currently pled, the allegations set forth in Plaintiff's fraud in the inducement claim fail to sufficiently allege a fraud separate and distinct from the performance of the Employment Agreement.   Indeed, Plaintiff's allegations concerning Defendants' alleged fraudulent acts arise from Defendants' performance -- or non-performance -- of the Employment Agreement.   Notably, the Complaint specifically lists the paragraph of the Agreement under which Defendants' obligations arise.  <u>See</u> Compl. ¶¶11-13.  Additionally, the allegations giving rise to the alleged fraud -- Defendants' answers on H-1B Visa form, and failure to pay Chen or find him employment upon arrival in America -- occurred months or years after Plaintiff and Defendants executed their contract.  <u>See</u> Compl. ¶¶15-

17

20.   Clearly, Plaintiff alleges that Defendants breached the Agreement, and did so in a fraudulent fashion.   Nonetheless, a claim of common law fraud that is intrinsic to the underlying agreement, as is the case here, is barred by the economic loss doctrine.   The manner in which Defendants breached the contract, be it fraudulently or otherwise, is an issue to be resolved within the contours of contract principles.   Even after a liberal reading of Plaintiff's Complaint, the Court is unable to separate Plaintiff's allegations of fraud from Defendant's obligations under the contract.

IV.   **CONCLUSION**

For the foregoing reasons, Count Two of Plaintiff's Complaint is dismissed against Defendant Ye, and that the allegations in the Complaint are insufficient to assert the theory of piercing the corporate veil, and as such, they are stricken.   In addition, the Court notes that the only remaining defendant in this case is HD, against whom default has been entered.   As such, Plaintiff should proceed to move for Default Judgment against HD within 20 days.

DATED:  November 15, 2010                         /s/ Freda L. Wolfson
                                                  Freda L. Wolfson, U.S.D.J.